**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TV TOKYO CORPORATION, | |
| Plaintiff, | |
| v. | Case No. 24-cv-8623 |
| THE INDIVIDUAL, CORPORATION, LIMITED LIABILITY COMPANY, PARTNERSHIP, AND UNINCORPORATED ASSOCIATION IDENTIFIED ON SCHEDULE A HERETO, | Judge April M. Perry |
| | Magistrate Judge Jeannice W. Appenteng |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF
DEFAULT AND DEFAULT JUDGMENT AGAINST
THE DEFENDANT IDENTIFIED IN AMENDED SCHEDULE A**

Plaintiff TV TOKYO CORPORATION ("Plaintiff") submits the following memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendants identified in Amended Schedule A (the "Defaulting Defendants"). (collectively, the "Defaulting Defendants").

The Defaulting Defendants, as set forth in the Complaint, have been charged with trademark infringement and counterfeiting, false designation of origin, copyright infringement and violation of the Illinois Uniform Deceptive Trade Practices Act.

Plaintiff takes pride in its products which are emblematic of Plaintiff's inspiration and mission to provide high quality products. Since the initial launch of NARUTO original brand products, the NARUTO mark is and has been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the NARUTO mark in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, the NARUTO websites and

social media sites, and point of sale materials. [Complaint, Dkt. No. 1 at ¶ 12]. Long before Defendant's acts described herein, Plaintiff launched the NARUTO brand products. Plaintiff TV TOKYO CORPORATION licenses the use of the NARUTO Trademark and owns the NARUTO Copyright. (U.S. Trademark Registration Nos. 3,229,574; 3,280,366 and 3,726,754 and Copyright Registration Nos. PA 2-431-062; PA 2-276-002 and PA 2-277-887 (the "NARUTO Trademarks and Copyrights")) *Id.* at ¶ 8. The U.S. registrations for the NARUTO Trademarks and Copyrights are valid, subsisting, and in full force and effect. *Id*. at ¶ 9.

On information and belief, Defaulting Defendants knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing infringing and/or counterfeit versions of the NARUTO Trademarks and Copyrights (the "Counterfeit/Infringing Products"). *Id.* at ¶¶ 4, 26. Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of their fully interactive commercial websites and online marketplaces operating under the Defendants Online Marketplace Accounts (the "Defendants Online Marketplace Accounts") identified in Amended Schedule A. *Id.* at ¶ 16. Defaulting Defendants target the United States, including Illinois, and have offered to sell, and on information and belief, have sold and continues to sell counterfeit NARUTO products to consumers within the United States, including the State of Illinois. *Id*. Additional factual assertions applicable to the Defaulting Defendants are found in Paragraphs 16-27 of the Complaint and are incorporated herein. *Id*. at ¶¶ 16-27.

Plaintiff filed this action on September 19, 2024, alleging, among other claims, federal trademark infringement and seeks statutory damages and injunctive relief. [Dkt. No. 1]. On September 25, 2024, this Court granted Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") [Dkt. Nos. 26, 27].

Paragraph 11 of the TRO permitted Plaintiff to complete service of process on Defendants by electronically publishing a link to the Complaint, the TRO and other relevant documents on a website and by sending an e-mail to the e-mail addresses identified in Exhibit 3 to the Declaration of Hiroaki Saiki and any e-mail addresses provided for Defendant by third parties that includes a link to said website. The Defendants identified in Amended Schedule A was properly served on October 18, 2024. [Dkt. No. 38]. The Defaulting Defendants have not filed an Answer or otherwise defended this action. *See* Declaration of Michael A. Hierl (the "Hierl Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on Counts I-IV of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiff further seeks an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) and 17 U.S.C. § 504(c) for willful trademark infringement, counterfeiting, and copyright infringement against the Defaulting Defendants for use of the NARUTO Trademarks and Copyrights in connection with counterfeit products sold through the Defendants' Online Marketplace Accounts. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit/Infringing Products and an Order that all assets in Defaulting Defendants' financial accounts operated by AliExpress and Alipay, as well as any newly discovered assets, be transferred to Plaintiff.

## **ARGUMENT**

## I.  **JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., U.S.C. § 1338(a)-(b) and 28

U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since the Defendants directly target business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. *See* [Complaint, Dkt. No. 1 , at ¶ 5] *uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial Internet websites and online marketplace accounts operating under the Defendants' Online Marketplace Accounts, the Defaulting Defendants have targeted sales from Illinois residents by operating at least one website and/or online marketplace account that offer shipping to the United States, including Illinois and, on information and belief, have sold Counterfeit/Infringing Products to residents within the United States, including Illinois. Defendants' websites look sophisticated and accept payment in U.S. Dollars via credit cards, AliExpress and Alipay. [Dkt. No. 1 at ¶ 18]. As such, personal jurisdiction is proper since the Defaulting Defendants are committing tortious acts in Illinois, is engaging in interstate commerce and has wrongfully caused Plaintiff substantial injury in the State of Illinois. *See Estee Lauder Cosmetics Ltd. & Make-up Art Cosmetics Inc. v. Ali-Beauties Store Store, et al.,* No. 1:19-cv-04579 (N.D. Ill. Sept. 12, 2019) (unpublished) [Dkt. No. 49]; *Bose Corp. v. Amilineinc, et al.,* No. 1:19-cv-05347 (N.D. Ill. Oct. 9, 2019) (unpublished) [Dkt. No. 44]; *Eye Safety Systems, Inc. v. 1CN7085, et al.*, No. 1:19-cv-06005 (N.D. Ill. Nov. 19, 2019) (unpublished) [Dkt. No. 49]; *Levi Strauss & Co. v. Acinth Girl Hy Store, et al.*, No. 1:19-cv-06200 (N.D. Ill. Nov. 19, 2019) (unpublished) [Dkt. No. 48].

4

## II.     PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On September 19, 2024, Plaintiff filed its Complaint alleging, among other claims, trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I); false designation of origin, 15 U.S.C. § 1125(a) (Count II); Copyright infringement, 17 U.S.C. § 101 et seq. (Count III) and violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et. seq. (Count IV).  The Defendants were properly served on October 18, 2024. [Dkt. No. 38]. Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. Hierl Declaration at ¶ 2. Accordingly, Plaintiff asks for entry of default and default judgment against the Defaulting Defendants.

## III.    PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the Complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the Complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the Complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

More than twenty-one (21) days have passed since Defendants were served, and no answer or other responsive pleading has been filed by the Defaulting Defendants. *See* Fed. R.

Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court. Plaintiff requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) and 17 U.S.C. § 504(c) for willful trademark infringement, counterfeiting, and copyright infringement against the Defaulting Defendants for use of infringing and counterfeit imitations of Plaintiff's Trademarks in connection with products sold through the Defendants' Online Marketplace Accounts. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit/Infringing Products and that all assets in Defaulting Defendants' financial accounts operated by AliExpress and Alipay and any newly identified accounts be transferred to Plaintiff.

### A.  Trademark Infringement and False Designation of Origin

A plaintiff bringing a trademark infringement and false designation of origin claim must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). *See Neopost,* 403 F. Supp. 2d at 684.

Plaintiff alleged in its Complaint that the Defaulting Defendants are using the federally registered NARUTO Trademarks without authorization on the Counterfeit/Infringing Products. This creates a likelihood of confusion, initial interest confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defaulting Defendants' Counterfeit/Infringing Products by Plaintiff. [Dkt. No. 1, ¶¶ 28-34].  Furthermore, by using the NARUTO Trademarks on the Counterfeit/Infringing Products, Defaulting Defendants create a false designation of origin and

6

a misleading representation of fact as to the origin and sponsorship of the Counterfeit Counterfeit/Infringing Products. *Id.* at ¶¶ 35-39. As a result, Plaintiff requests entry of judgment with respect to Count I for trademark infringement and Count II for willful false designation of origin against the Defaulting Defendants.

### B.    Copyright Infringement

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization …, or any other form in which a work may be recast, transformed or adapted." 17 U.S.C. § 101. Lastly, "when cartoons or movies are copyrighted, a component of that copyright protection extends to the characters themselves, to the extent that such characters are sufficiently distinctive. *Warner Bros. Entm't Inc. v. X One X Prods.,* 644 F.3d 584, 597 (8th Cir. 2011). Here, Plaintiff is the owner of the NARUTO Copyrights. The accused products are derived from the distinctive creative character designs and content found in the NARUTO Copyrights. [Dkt. No. 1, ¶¶ 40-50]. As such, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of this claim.

### C.    Violation of the Illinois Uniform Deceptive Trade Practices Act

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. The Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D. Ill. 1994).  Illinois courts look to federal case law and apply the

same analysis to state infringement claims. *Id.* (citation omitted). As such, the determination as to whether there is a likelihood of confusion under the Illinois Uniform Deceptive Trade Practices Act is similar to the Lanham Act analysis. *Am. Broad. Co. v. Maljack Prods., Inc.,* 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).

Plaintiff alleged in its Complaint that Defaulting Defendants have engaged in acts violating Illinois law including, but not limited to, passing off its products as those of NARUTO, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing a likelihood of confusion and/or misunderstanding as to affiliation, connection, or association with Plaintiff's genuine products, representing that its counterfeit products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. [Dkt. No. 1, ¶¶ 51-54]. Plaintiff, therefore, requests entry of judgment with respect to Count IV of its Complaint for willful violation of the Illinois Uniform Deceptive Trade Practices Act against the Defaulting Defendants.

## IV. PLAINTIFF IS ENTITLED TO MONETARY DAMAGES AND INJUNCTIVE RELIEF

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations.

Plaintiff advertises throughout the world and spends considerable resources marketing and protecting its trademark and associated products. Plaintiff's promotional efforts include website and social media sites. *Id.* at ¶ 12.

## A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides that " the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). In *Sara Lee*, 36 F. Supp. 2d at 170, the court awarded statutory damages in the amount of $750,000 after estimating the defendants' ill-gotten gains and trebling them to "deter and punish a willful continuous course of infringements and defiance of the judicial

process." The *Sara Lee* analysis included seven factors: (1) the profits made by the defendants; (2) the revenues lost by plaintiff; (3) the value of the mark; (4) the deterrent effect on others; (5) whether the conduct was innocent or wilful; (6) whether a defendant has cooperated in providing records; and (7) the deterrent effect on the defendant.

The USPTO's Office of Policy and International Affairs and the National Telecommunications and Information Administration ("NTIA") together working as part of the Department of Commerce's Internet Policy Task Force conducted a review of the relationship between the availability and protection of online copyrighted works and innovation in the Internet economy. The Internet Policy Task Force's White Paper on Remixes, First Sale, and Statutory Damages (White Paper) was published on January 28, 2016 (See Exhibit 1), which recognizes in copyright law that reduced damages may be warranted to avoid impeding new creative works, e.g., remixes -- works created through changing and combining existing works to produce something new and creative -- as part of a trend of user generated content. However, regarding straight-out counterfeiting where impeding creativity is not a concern, The Office of the U. S. Trade Representative issued findings of the Special 301 Out-of-Cycle Review of Notorious Markets for 2015, December 2015 (See Exhibit 2), highlighting disturbing trends in the marketing and distribution of counterfeit goods online, with escalating levels of counterfeit sales online including an increase in the services that support such operations. With an estimated 15% increase in online sales of counterfeit goods, the economic toll of counterfeiting on governments, businesses, and consumers is disturbing.

Accordingly, a significant consideration should be whether infringing sales were made over the Internet, the rationale being that sales over the Internet increase the amount of an award because use of the Internet made the infringement widely available.

The lack of information regarding Defaulting Defendant's sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *See Petmed Express, Inc. v. medpets.com, Inc.,* 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B.    Defendant's Counterfeiting Was Willful

As alleged in Plaintiff's Complaint, Defaulting Defendants facilitate sales by designing the Defendants' Online Marketplace Accounts so that it appears to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine NARUTO products. [Dkt. No. 1 at ¶ 18].

Pursuant to 15 U.S.C. § 1117(e), a counterfeiting violation is presumed willful "for purposes of determining relief if the violator ... knowingly provided ... materially false contact information to a domain name registrar...." 15 U.S.C. § 1117(e). Pursuant to 17 U.S.C. § 504(c)(3)(A), a counterfeiting violation is presumed willful "for purposes of determining relief if the violator ... knowingly provided ... materially false contact information to a domain name registrar...." 17 U.S.C. § 504(c)(3)(A). Defaulting Defendants' Online Marketplace Accounts look sophisticated and include images and design elements that make it very difficult for consumers to distinguish the counterfeit site from an authorized website. [Dkt. No. 1  at ¶ 18]. Thus, willfulness is presumed in the present case under 15 U.S.C. § 1117(e) and 17 U.S.C. § 504(c)(3)(A).

Even without the statutory presumption, it is clear that Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions

where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. In the present case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiff's rights in the NARUTO Trademarks and Copyrights, especially given Plaintiff's extensive promotional efforts discussed above. After all, the Defaulting Defendants have taking great pains to conceal its identities so as to avoid being held accountable for its counterfeiting activities. [Dkt. No. 1 at ¶ 21].

Finally, District Courts have deemed counterfeiting willful when defendants default. *See Estee Lauder Cosmetics Ltd. & Make-up Art Cosmetics Inc. v. Ali-Beauties Store Store, et al.,* No. 1:19-cv-04579 (N.D. Ill. Sept. 12, 2019) (unpublished) [Dkt. No. 49]; *Bose Corp. v. Amilineinc, et al.,* No. 1:19-cv-05347 (N.D. Ill. Oct. 9, 2019) (unpublished) [Dkt. No. 44]; *Eye Safety Systems, Inc. v. 1CN7085, et al.*, No. 1:19-cv-06005 (N.D. Ill. Nov. 19, 2019) (unpublished) [Dkt. No. 49]; *Levi Strauss & Co. v. Acinth Girl Hy Store, et al.*, No. 1:19-cv-06200 (N.D. Ill. Nov. 19, 2019) (unpublished) [Dkt. No. 48].

C. **Defaulting Defendants' Wide Exposure over the Internet Merits the Requested Award**

Defendants who operate online attract wide market exposure through Internet traffic and/or advertisement. Defaulting Defendants' wide market exposure over the Internet warrants the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.*, 2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) (awarding $150,000 in statutory damages, noting "the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider

12

audience than counterfeiting through a physical store."); *Luxottica USA LLC v. The P'ships*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (N.D. Ill. Mar. 2, 2017) (summary judgment and awarding $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store."); *Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, at *15-16 (D.N.J. Jun. 14, 2010) (significant damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, at *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

Given the wide exposure of the Defaulting Defendants' products over the internet, a high award of damages is warranted to sufficiently deter the Defaulting Defendants from selling infringing products in the future.

### D. The Requested Statutory Damages Award Must Sufficiently Deter Defaulting Defendants and Similar Online Counterfeit Sellers

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. In *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The P'ships*, 2015 U.S. Dist. LEXIS 78961, at *8.

To reach global consumers, counterfeiters advertise, offer for sale, and sell their products via social media platforms and popular e-commerce sites. In the 2024 fiscal year alone, U.S. government seizures of counterfeit goods totaled more than $5.4 billion MSRP. (See Exhibit 3). China and Hong Kong remained the primary sources of counterfeit and pirated goods seized, accounting for more than 90 percent of all seizures. *Id.* Additionally, a 2021 report prepared by The Buy Safe America Coalition titled *The Counterfiet Silk Road* included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs. (See Exhibit 4). Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

This current matter involves the e-commerce platforms of AliExpress and Alipay. Despite Plaintiff's request to provide sales information for each defendant, the e-commerce platforms of AliExpress and Alipay do not provide Plaintff with this requested information. (See Exhibit 5 – Declaration of Luis Figueroa, ¶¶ 4, 7-9). Without this information, it is difficult for Plaintiff to determine the scope of the Defaulting Defendants' infringing activities.

As a result, Plaintiff has requested a statutory damages award in the amount of fifty thousand dollars ($50,000) to sufficiently deter the Defaulting Defendants and other similarly situated online sellers from marketing and selling infringing NARUTO Products.

### E. A High Statutory Damages Award Is Appropriate and Just

Courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage

awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising"). Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In similar cases involving willful Internet-based counterfeiting, Courts in this district have awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Burberry Limited, et al. v. The Partnerships And Unincorporated Associations Identified On Schedule "A",* No. 1:14-cv-04824 (N.D. Ill. Sep. 25, 2014) (unpublished) [Dkt. No. 38] (awarding $2,000,000 in statutory damages per defendant); *Calvin Klein Trademark Trust et al. v. Chen Xiao Dong, et al.,* No. 15-cv-2224 (N.D. Ill. May 12, 2015) (unpublished) [Dkt. No. 45] (awarding $2,000,000 in statutory damages per defendant.) Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c), Plaintiff respectfully request the Court's entry of an award of one hundred thousand dollars ($100,000) against the Defaulting Defendants.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands,*

*Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005).

Finally, in determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Plaintiff] brand and the efforts taken to protect, promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16. Thus, Plaintiff's request for statutory damages award should be given favorable consideration in light of Plaintiff's effort to protect, promote and enhance the NARUTO brand.

**D.** **Courts in this District Regularly Award Damages of at Least $100,000 per Defaulting Defendant**

In a similar case involving willful Internet-based counterfeiting with Plaintiff, other courts in this district awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See TV Tokyo Corporation v. The Partnerships et al.,* No. 23-cv-2982 (J., Kocoras) (N.D. Ill. Sept. 21, 2023) (unpublished) [Dkt. No. 73] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 23-cv-3021 (J., Kocoras) (N.D. Ill. Sept. 20, 2023) (unpublished) [Dkt. No. 45] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 23-cv-3049 (J., Leinenweber) (N.D. Ill. Sept. 6, 2023) (unpublished) [Dkt. No. 47] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 23-cv-3091 (J., Pallmeyer)

16

(N.D. Ill. Oct. 5, 2023) (unpublished) [Dkt. No. 78] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 23-cv-3119 (J., Kness.) (N.D. Ill. Oct. 26, 2023) (unpublished) [Dkt. No. 53] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 23-cv-15325 (J., Jenkins) (N.D. Ill. Jan 8, 2024) (unpublished) [Dkt. No. 72] ($75,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-2879 (J., Cummings) (N.D. Ill. Nov. 8, 2024) (unpublished) [Dkt. No. 43] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-3594 (J., Gottschall) (N.D. Ill. Dec. 2, 2024) (unpublished) [Dkt. No. 57] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-4242 (J., Gottschall) (N.D. Ill. Jan. 24, 2025) (unpublished) [Dkt. No. 59] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-4244 (J., Kennelly) (N.D. Ill. Sept. 19, 2024) (unpublished) [Dkt. No. 89] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-4439 (J., Daniel) (N.D. Ill. Sept. 19, 2024) (unpublished) [Dkt. No. 72] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-5555 (J., Valderrama) (N.D. Ill. Sept. 19, 2024) (unpublished) [Dkt. No. 60] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-6056 (J., Cummings) (N.D. Ill. Dec. 5, 2024) (unpublished) [Dkt. No. 40] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-6187 (J., Valderrama) (N.D. Ill. Nov. 7, 2024) (unpublished) [Dkt. No. 101] ($150,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-6985 (J., Kendall) (N.D. Ill. Oct. 29, 2024) (unpublished) [Dkt. No. 67] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-6986 (J., Alonso) (N.D. Ill. Oct. 31, 2024) (unpublished) [Dkt. No. 80] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-8964 (J., Jenkins) (N.D. Ill. Dec. 19, 2024) (unpublished) [Dkt. No. 78] ($75,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-9050 (J., Valderrama) (N.D. Ill. Jan. 24, 2025) (unpublished) [Dkt. No. 49] ($100,000);

*TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-9280 (J., Kendall) (N.D. Ill. Dec. 17, 2024) (unpublished) [Dkt. No. 56] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 24-cv-9809 (J., Durkin) (N.D. Ill. Mar. 4, 2025) (unpublished) [Dkt. No. 63] ($100,000); *TV Tokyo Corporation v. The Partnerships et al.,* No. 25-cv-719 (J., Kocoras) (N.D. Ill. May 2, 2025) (unpublished) [Dkt. No. 62] ($100,000).

The above-referenced cases include defendants located on e-commerce platforms such as DHgate, Joom, Fruugo, AliExpress, Alibaba and Alipay which do not provide Plaintiff with the sales information for the defendants. However, the court the above-refernced matters determined that a default judgment in the amount of at least $75,000 was sufficient to adequately compensate plaintiff for the infringement of its trademark and deter defendants from future conduct.

Given how another court in this jurisdiction awarded plaintiff at at least $75,000 in damages per Defaulting Defendant, Plaintiff's present request for damages in the amount of $50,000 per Defaulting Defendant is warranted and well-supported.

### E.     Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's trademark rights in the NARUTO Trademarks and Copyrights, including at least all injunctive relief previously awarded by this Court to Plaintiff in the TRO and Preliminary Injunction. Plaintiff is also entitled to injunctive relief so it can quickly take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling Counterfeit Plaintiff's Products. *See Estee Lauder Cosmetics Ltd. & Make-up Art Cosmetics Inc. v. Ali-Beauties Store Store, et al.,* No. 1:19-cv-04579 (N.D. Ill. Sept. 12, 2019)

(unpublished) [Dkt. No. 49]; *Bose Corp. v. Amilineinc, et al.,* No. 1:19-cv-05347 (N.D. Ill. Oct. 9, 2019) (unpublished) [Dkt. No. 44]; *Eye Safety Systems, Inc. v. 1CN7085, et al.*, No. 1:19-cv-06005 (N.D. Ill. Nov. 19, 2019) (unpublished) [Dkt. No. 49]; *Levi Strauss & Co. v. Acinth Girl Hy Store, et al.*, No. 1:19-cv-06200 (N.D. Ill. Nov. 19, 2019) (unpublished) [Dkt. No. 48].

## V. CONCLUSION

Plaintiff respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages pursuant to 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c) in the amount of fifty thousand dollars ($50,000) against the Defaulting Defendants and enter a permanent injunction order prohibiting Defaulting Defendants from selling Counterfeit/Infringing Products and transferring all assets in Defaulting Defendants' financial accounts operated by AliExpress and Alipay to TV TOKYO CORPORATION.

Respectfully submitted,

Dated: May 8, 2025

By:     s/Michael A. Hierl
        Michael A. Hierl (Bar No. 3128021)
        William B. Kalbac (Bar No. 6301771)
        Robert P. McMurray (Bar No. 6324332)
        John Wilson (Bar No. 6341294)
        Hughes Socol Piers Resnick & Dym, Ltd.
        Three First National Plaza
        70 W. Madison Street, Suite 4000
        Chicago, Illinois 60602
        (312) 580-0100 Telephone
        mhierl@hsplegal.com

        Attorneys for Plaintiff
        TV TOKYO CORPORATION

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Memorandum was electronically filed with the Clerk of the Court, served by publication and email to the Defendants identified in Amended Schedule A and served on all counsel of record and interested parties via the CM/ECF system on May 8, 2025.

*/s/ Michael A. Hierl*
Michael A. Hierl